IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST )
AND SOUTHWEST AREAS PENSION )
FUND and HOWARD McDOUGALL, )
Trustee, )
 )
        Plaintiffs, )
 )
v. ) No. 06 C 6120
 )
MICHIGAN DRUM RENOVATING COMPANY, )
a Michigan corporation, )
 )
        Defendant. )

## OPINION AND ORDER

On November 8, 2006, plaintiff Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and one of its trustees[1] filed this lawsuit naming Michigan Drum Renovating Company (a dissolved Michigan corporation) and Thomas Christopher as defendants. The Pension Fund's Complaint alleges the following. Michigan Drum was a party to collective bargaining agreements which required that it contribute to the Pension Fund. Christopher was an officer of Michigan Drum and its majority shareholder. On April 4, 2004, Michigan Drum ceased operations,

---

[1]Since the trustee is named in his fiduciary capacity only, this opinion will refer to the Pension Fund as the sole plaintiff.

effecting a complete withdrawal under the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1383.[2] At the time, Michigan Drum had a withdrawal liability of $223,404.28. See 29 U.S.C. § 1381(b). On July 30, 2004, Michigan Drum was dissolved. At the time of its dissolution, Michigan Drum had a negative net worth of $286,584. Around the time of dissolution, it also had $93,000 of cash on hand. The Complaint alleges that Christopher distributed $62,000 of the cash to himself instead of using it to pay debts of Michigan Drum.[3]

On January 31, 2007, Christopher was voluntarily dismissed from the action.[4] As to Michigan Drum, the Pension Fund moved for a default judgment, submitting an affidavit and other documentation supporting the allegations of the Complaint and costs and fees incurred in prosecuting the case, and also computing pre-judgment interest and liquidated damages. On

---

[2] In its brief, the Pension Fund contends Michigan Drum's withdrawal liability arose in October 2003 when Michigan Drum ceased all covered operations.

[3] Presently, the Pension Fund alleges that the cash on hand was $93,843 and that Christopher distributed $60,000 to himself, $30,000 to the estate of Michigan Drum's other shareholder, and the remainder was used for expenses of Michigan Drum.

[4] One of the documents presently submitted to the court indicates that Christopher settled with the Pension Fund by agreeing to pay the Pension Fund $40,000.

March 26, 2007, a judgment was entered in plaintiff's favor and against Michigan Drum in the amount of $287,790.53 plus post-judgment interest.

On November 9, 2007, the Pension Fund filed a motion[4] seeking a supplemental judgment against David Rosenberg ("David"), a resident of this judicial district, in the amount of $7,500. In the motion, the Pension Fund asserts that $30,000 of Michigan Drum's remaining cash was distributed to the Estate of Edwin Rosenberg (the "Estate" or Edwin), which owned 33% of Michigan Drum's shares, and that David effectively received 25% of the $30,000 in that he was a devisee entitled to 25% of the Estate. David opposes the motion.[5] He contends that there is no jurisdiction over him because he has not been served with process. He also contends that the factual contentions of the motion are not adequately supported. Additionally, he opposes the motion on its merits, contending that no timely claim was

---

[4]The motion was not supported by a declaration or affidavit or any documentation supporting the new allegations of fact. Some support is provided with the Pension Fund's reply.

[5]An attorney, John Etzkorn, filed David's response to the motion, but the attorney failed to file an appearance form as required by Local Rules 83.16(b) and (d). A copy of today's opinion has been mailed to David's home address as well as Etzkorn. However, Etzkorn must promptly file his appearance form or face the possibility of being required to pay a penalty or otherwise be sanctioned. See id. 83.16(e).

made against the Estate and that he did not receive any portion of the $30,000 distributed from Michigan Drum.

Pursuant to Fed. R. Civ. P. 69(a), the Pension Fund brings a supplemental proceeding to enforce the judgment that was entered on March 26, 2007. In such a proceeding, the Pension Fund may seek to collect upon assets of the judgment debtor corporation that were distributed to shareholders instead of being used to pay debts of the corporation. See Matos v. Richard A. Nellis, Inc., 101 F.3d 1193, 1195-96 (7th Cir. 1996). That is distinct from an original action asserting withdrawal liability directly against a responsible officer, shareholder, partner, joint venturer, or owner of the withdrawing business entity. See, e.g., Board of Tr. of W. Conference of Teamsters Pension Trust Fund v. H.F. Johnson Inc., 830 F.2d 1009, 1014-17 (9th Cir. 1987) (six-year limitation period of MPPAA, 29 U.S.C. § 1451(f), applied to withdrawal liability claim against estate of deceased joint venturer, preempting Montana limitation period for filing a claim against the estate). Compare Board of Tr. of Trucking Employees of N. Jersey Welfare Fund, Inc.-Pension Fund v. Able Truck Rental Corp., 822 F. Supp. 1096 (D.N.J. 1993) (state law statute of limitations incorporated in Rule 69(a) applied to supplemental proceeding to enforce judgment for withdrawal liability against other members of the control group). Rule 69(a) incorporates the supplemental practices and procedures

of the state in which the district court is located, except to the extent there is an applicable federal statute. Fed. R. Civ. P. 69(a). In Illinois, procedures for enforcing judgments are found in 735 ILCS 5/12. The generally applicable statute of limitations for enforcing a judgment is seven years. Id. 5/12-108. Under Illinois probate law, claims against an estate must be filed within a designated period of time under probate law regardless of the statute of limitations that would otherwise be applicable to the claim. See 755 ILCS 5/18-12, 18-3(a); McCue v. Colantoni, 80 Ill. App. 3d 731, 400 N.E.2d 683, 686-87 (1st Dist. 1980). Just as § 12-108 would give way to any shorter period provided for under Illinois probate law, it would give way to similar laws of other states when an estate is being probated elsewhere. Since the Estate was being probated in Michigan, where Edwin lived and died, supplemental proceedings against the Estate (or one of the heirs or devisees) required that a claim against the Estate be brought within the time permitted by Michigan probate law. See Mich. Comp. Laws § 700.3803.

The parties do not submit conclusive evidence as to what happened to the assets of Michigan Drum around the time of its dissolution. Without making any conclusive determination, the facts supported by the parties' submissions are as follows. Edwin died on June 3, 2004. The distribution of $30,000 from Michigan Drum occurred on July 1, 2004 and was paid directly to

the Estate. After payment of expenses and distribution of certain designated items, Edwin's will provided that his widow Ruth Rosenberg would receive 50% of the Estate and his nephew David Rosenberg and niece Lisa Rosenberg would each receive 25%. According to a March 23, 2005 account of fiduciary report[7] that the Estate's personal representative submitted to the probate court, as of that date $12,500 each had previously been distributed to David[8] and, after expenses and prior distributions, $477,702.35 of assets remained to be distributed. David states in his affidavit that he received $12,500 from the Estate, implying that this was the only cash distribution received from the Estate. The affidavit, though, is silent as to what further distributions he may have received. In his brief, David again mentions the $12,500, again implying without expressly stating, that this was all he received. His express statement, though, is that he did not receive any amount expressly designated as being a $7,500 share of the $30,000 that the Estate had received from Michigan Drum. David does not attempt to explain what happened to the remaining assets of the Estate. The Pension Fund also fails to submit any document

---

[7]This report is attached to the Pension Fund's reply, so David did not have an opportunity to respond to its implications.

[8]It is stated that this distribution had been ordered by the court. Lisa also received $12,500 and Ruth received $25,000.

showing that David eventually received a 25% share of the remaining assets of the Estate.[8] In any event, there is nothing to indicate that the Estate ever repaid $30,000 to Michigan Drum or that it was required to pay any specific debt or expense based on having received that money. Therefore, the $30,000 went into the general assets of the Estate. Even if David never received a further distribution, the $12,500 represented 25% of a $50,000 net value of the Estate. Without the Estate receiving the $30,000 payment from Michigan Drum, there would have only been $20,000 available. It would appear that David effectively received $7,500 of the cash that Michigan Drum distributed to the Estate.

David does submit some correspondence that occurred between the Pension Fund and the Estate's attorney. This correspondence includes a copy of the notice to creditors that is represented as having been filed on June 11, 2004. There is nothing to indicate that, prior to this correspondence, the Estate's attorney or personal representative was aware of the Pension Fund being a possible creditor of the Estate. The first

---

[8] The Pension Fund submits a November 2004 petition of David and Lisa requesting a probate court order requiring distribution of their and Ruth's shares of a cash asset of the Estate then valued at $481,033.88. Nothing is submitted to show that this motion was granted. It is possible that this petition, which predates the March 23, 2005 report, resulted in the court ordering the $12,500 distribution to David.

letter from the Pension Fund to the attorney is dated November 28, 2005.[9] On January 5, 2006, the attorney informed the Pension Fund that any claim against the Estate was barred since the notice to creditors had been issued more than four months earlier. In a letter dated June 22, 2006, a Pension Fund attorney wrote to the Estate's attorney stating the amount of Michigan Drum's withdrawal liability assessment and that it was the Pension Fund's position that the limitation period of Michigan probate law was preempted by the MPPAA. It is also stated that, if nothing is heard from the attorney, it will be assumed he no longer represents the Estate and the Pension Fund will instead contact the heirs. It is unknown if the attorney responded to the Pension Fund, but, on July 11, 2006, he forwarded copies of the above correspondence to the surviving Rosenbergs. The MPPAA lawsuit against Michigan Drum and Christopher was filed on November 8, 2006. The supplemental motion regarding David was filed on November 9, 2007.

For purposes of the present discussion, it will be assumed, without conclusively deciding, that David effectively received $7,500 of the cash distribution from Michigan Drum. It will also be assumed that no claim against the Estate was filed

---

[9]In later correspondence with the Rosenbergs, the Estate's attorney mentions that the Estate had been closed prior to receiving this letter.

either with the Estate or in a court within four months after publication of the notice to creditors. Additionally, it is assumed that, prior to November 2005, the personal representative of the Estate was unaware of the Pension Fund's possible claim against the Estate.

As of July 2004, § 700.3803 provided:[10]

> (1) A claim against a decedent's estate that arose before the decedent's death, including a claim of this state or a subdivision of this state, whether due or to become due, absolute or contingent, liquidated or unliquidated, or based on contract, tort, or another legal basis, if not barred earlier by another statute of limitations or nonclaim statute, is barred against the estate, the personal representative, the decedent's heirs and devisees, and nonprobate transferees of the decedent unless presented within 1 of the following time limits:
> (a) If notice is given in compliance with section 3801 or 7504, within 4 months after the date of the publication of notice to creditors, except that a claim barred by a statute at the decedent's domicile before the publication for claims in this state is also barred in this state.
> (b) For a creditor known to the personal representative at the time of publication or during the 4 months following publication, within 1 month after the subsequent sending of notice or 4 months after the date of the publication of notice to creditors, whichever is later.

---

[10] The statute was amended effective September 1, 2004. The amendment did not change the possible time periods under the statute. See Mich. Comp. Laws § 700.3803 (2007).

> (c) If the notice requirements of section 3801 or 7504 have not been met, within 3 years after the decedent's death.
> (2) A claim against a decedent's estate that arises at or after the decedent's death, including a claim of this state or a subdivision of this state, whether due or to become due, absolute or contingent, liquidated or unliquidated, or based on contract, tort, or another legal basis, is barred against the estate, the personal representative, and the decedent's heirs and devisees, unless presented within 1 of the following time limits:
> (a) For a claim based on a contract with the personal representative, within 4 months after performance by the personal representative is due.
> (b) For a claim to which subdivision (a) does not apply, within 4 months after the claim arises or the time specified in subsection (1)(a), whichever is later.
> (3) This section does not affect or prevent any of the following:
> (a) A proceeding to enforce a mortgage, pledge, or other lien on estate property.
> (b) A proceeding to establish the decedent's or the personal representative's liability for which the decedent or the personal representative is protected by liability insurance to the insurance protection limits only.
> (c) Collection of compensation for services rendered and reimbursement of expenses advanced by the personal representative or by an attorney, auditor, investment adviser, or other specialized agent or assistant for the personal representative of the estate.

Since the supplemental proceeding is based on the distribution of the $30,000 to the Estate, not on any withdrawal liability that Edwin may have been personally liable for prior to

- 10 -

his death, the supplemental claim presently at issue arose after Edwin's death. Pursuant to § 700.3803(2)(b),[12] the Pension Fund had four months after the claim arose or four months after publication of notice to the creditors, whichever was later, in order to bring its claim against the Estate, the heir, or devisees. The claim arose on July 1, 2004, when $30,000 was distributed from Michigan Drum to the Estate. No claim was filed with the Estate within four months thereafter. Since no timely claim was filed, the Pension Fund's claim against the Estate, an heir, or devisee was forever barred. Mich. Comp. Laws §§ 700.3803(2), 700.3955, 700.3957.

Even if the November 28, 2005 letter to the Estate's attorney were to be considered a claim, see Mich. Comp. Laws § 700.3804(1) (2005), and timely, the Pension Fund's present claim would be barred. The November 28, 2005 request was rejected in a letter dated January 5, 2006. Any court proceeding challenging the disallowance had to be instituted in an appropriate court within 63 days thereafter. Id. §§ 700.3804(2), 700.3806(1).

Even if the Pension Fund's claim against the Estate did not arise until a judgment was entered against Michigan Drum, the

---

[12]The Pension Fund does not contend that Michigan Drum's withdrawal liability constitutes a lien on the distributed cash that would fall under the exception stated in § 700.3803(3)(a).

supplemental proceeding is untimely. The judgment against Michigan Drum was entered on March 26, 2007. No claim was filed against the Estate or David within four months thereafter. The motion to enforce the judgment was not filed until November 9, 2007.

Last, even if the claim against David is not barred for failing to satisfy the four-month limitation period contained in § 700.3803, it is untimely for another reason. Section 700.3957 requires that any claim for recovery against a distributee that was not previously adjudicated or otherwise barred must be brought within three years of the decedent's death or one year of the distribution of property, whichever is later. Any distribution David received apparently occurred prior to November 2005. The later time period would be three years after Edwin's death, which would have been June 3, 2007.

For the foregoing reasons, it appears that the Pension Fund's attempt to enforce the judgment as against David would be denied as untimely. Such a decision cannot be conclusively made, however, because no sufficient basis for making definitive factual determinations has been presented. Such a ruling is tentative for another reason as well. David objects that he was never served with proper process. He contends that jurisdiction over his person is lacking unless he is served with a citation consistent with 735 ILCS 5/2-1402. That provision, however,

pertains to issuing citations to discover assets. The Pension Fund's motion, however, is more in the nature of a garnishment. See 735 ILCS 5/12-701. A garnishment, however, must be supported by an affidavit and requires that summons be served on the garnishee. Id. Since no summons was served on David, jurisdiction over his person was never acquired. Therefore, the Pension Fund's motion will be denied without prejudice. If the Pension Fund decides to file a new motion, it must serve David with adequate process; provide a sufficient factual presentation supported by a declaration, affidavit, and/or authenticated documents; and file a supporting memorandum adequately addressing the issues discussed above.

IT IS THEREFORE ORDERED that plaintiff's supplemental motion for judgment against David Rosenberg [19] is denied without prejudice. Attorney John Etzkorn shall promptly file an appearance on behalf of his client.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: MARCH 27, 2008